### L. C. ROCKWELL, PLAINTIFF IN ERROR, v. THE HIGHLAND DITCH CO., DEFENDANT IN ERROR.

1. CONTRACT TO DELIVER WATER FROM RESERVOIR.—A contract be-
   tween the owners of a reservoir, who are likewise owners in fee of
   the land on which the same is situate, of the one part, and two
   grantees of definite quantities of water to each, to be supplied there-
   from, of the other part, which clearly states and defines the rights
   of the grantees, their heirs, executors, administrators and assigns,
   also the obligations of the grantors, is conclusive of such rights and
   obligations in all controversies that may arise between the parties,
   or their legal representatives concerning the same, and such con-
   tract can in no manner be affected by the rights of user, which may
   be acquired to the waters of a running stream under the constitu-
   tion and statutes of the state.
2. ASSIGNEE OF FRACTIONAL INTEREST NOT ENTITLED TO SEPARATE
   DELIVERY.—The enumeration of the rights of the grantees in an
   agreement to deliver two distinct and specific quantities of water
   to two grantees mentioned, or their legal representatives, wherein
   the only right to a separation or division of the water granted, is,—
   " To be delivered in separate shares to each party, or the whole
   quantity to be delivered together, as said second parties may de-
   termine, either of said parties to have the right to demand and re-
   ceive his proportionate share at any time," is an inhibition upon the
   right to demand the separate delivery of more than the two quan-

tities of water specified, and consequently a limitation upon the alienees of the parties to require separate deliveries of their respective subdivisions. The alienees, whether by contract or operation of law, must receive the water in the same manner as the original grantees, in two distinct shares or quantities only.

3. EQUITABLE CONSTRUCTION OF CONTRACTS.—Equitable construction, and those of convenience and value, are only allowable to control the interpretation and construction of contracts in those cases where the intention of the parties cannot be clearly derived from the terms of their agreements, or where their provisions are equally susceptible of two constructions. But where the language is clear and the intention manifest, they cannot be disregarded in determining the rights of the parties, or their assigns.

*Error to District Court of Boulder County.*

Mr. L. C. ROCKWELL, *pro se.*

Messrs. BYRON L. CARR & F. P. SECOR, for defendant in error.

BISSELL, J. The refusal of the ditch company to deliver water to Rockwell was the gravamen of this suit. It was an equitable proceeding to obtain a perpetual injunction to enforce his claim. On the hearing the bill was dismissed. According to the view which the court takes of the rights of the parties it will not be needful to refer to any part of the testimony, save in the most cursory fashion, except as to the contract upon which Rockwell's right rests and out of which the obligations of the ditch company spring. The provisions and conditions of the contract, other than a few of its specific clauses, can be easily understood from a general statement of them. In May, 1881, Hetzel and Osborn were owners of a quarter section of land in Boulder county, Colorado. In May of that year they granted and conveyed the realty to The Highland Ditch Company in consideration for the grant and sale of a perpetual water right for two hundred and fifty inches of water. It would seem that there was a depression in the land which the company proposed to improve and turn into a reservoir for the storage and distribution

of water to their various customers.    As is usual in those cases
the contract ran to the grantors of the property, their heirs, rep-
resentatives and assigns.    It is unnecessary to state the gener-
al provisions of the agreement concerning the construction of
the ditches and the delivery of the water.    It was distinctly
provided that the ditch company should "furnish water at
such time as Hetzel and Osborn might require between the
1st of March and the 1st of November, and at one continu-
ous time, or at different times, as said second party may
elect, until the added days of all said several times shall
equal sixty days in any given year."    It was further stipu-
lated "that the proportionate quantity of water to be deliv-
ered to each of said parties of the second part, respectively,
is sixty-two and one half inches to said Jacob Hetzel,
and one hundred and eighty-seven and one half to the
said Osborn, to be delivered in separate shares to each
party, or the whole quantity to be delivered together as
said second parties may determine,—either of said parties
to have the right to demand and receive his proportionate
share at any time.    That the heirs, executors, administra-
tors and assigns of said second party shall severally and
jointly have the same rights in relation to each other
that second parties have in reference to each other."    Evi-
dently the rights of the grantees of the perpetual water
right, and the obligations of the company with reference to
the supply, are fixed by the terms of the contract and must
be learned from its provisions.    None of the rights to the
waters of a running stream under the constitution and stat-
utes of the state which may be acquired by the user can
in any manner affect the obligations or relations of the con-
tracting parties.    The company was the owner in fee of the
land on which the lake was situated, and had an absolute
title to the water, with the right and privilege of sale accord-
ing to their own pleasure.    The accurate construction of this
contract is one of some difficulty, but the conclusion arrived
at seems to be the only one consistent with its provisions.
It is not necessary to determine what may be the obligations

of the original grantees, and their subsequent alienees, as between themselves, since the action was brought solely against the ditch company by an alienee whose rights are to be measured by the terms of the original instrument. There will be no discussion about the right of the various owners and alienees, in case of a convention between them to insist upon a delivery of the water at such times as they may elect, and in such quantities as they may desire, subject to the expressed limits of the agreement. The sole inquiry, and the only question determined by this decision, is as to the rights which Osborn acquired under the contract, and whether his right is a divisible one without the consent of the company. The argument that it is the policy of our law to prevent restraints upon ·the alienation of property rights, which is always persuasive when its application is possible and consistent with the agreement of the parties, can have no influence in the settlement of the present controversy. The matter rests wholly in contract, and the question is a naked one of construction. There seems to be no escape from the conclusion that there was an agreement to deliver sixty-two and one half inches to Hetzel, and one hundred eighty-seven and one half inches to Osborn. It was a contract to deliver two distinct and specific quantities of water to the two named grantees for a definite period of time, with no right of separation or division as to quantity, except the expressed one of the right to receive the total quantity in separate shares to each party, as stated, or the right to receive the total two hundred fifty inches at one time, at the election of the grantees. This enumeration of the rights and the definite relation of Hetzel's sixty-two and one half inches, and Osborn's one hundred eighty-seven and one half inches, with an expressed inhibition upon any right of division except that which would give each his limited quantity, or to both the entire amount at one time, must be taken as a limitation upon the right of division, which would naturally follow a general grant of a water right to parties and their grantees. The intention of the parties to the contract with reference to alien-

ees is very clearly expressed by the subsequent provision, that the heirs and assigns shall enjoy rights with reference to each other identical with those which Hetzel and Osborn have with reference to each other, which are to receive the sixty-two and one half inches, and one hundred-eighty seven and one half inches, as two distinct and specified quantities of water, and the option to receive the two hundred and fifty inches at one and the same time, if they may so elect. The introduction of this last clause was evidently the result of a purpose to so limit the right of division as to the alienees, whether by contract or operation of law, that they must take as Hetzel or Osborn took, in two distinct and specified shares, divisible in the quantities named. While equitable considerations and those of convenience and value are often allowed to control the construction and interpretation of contracts, it is only in those cases where the intention of the parties cannot be clearly derived from the terms of their agreement, or where its provisions are equally susceptible of two constructions. When the language is clear and the intention manifest, they cannot be disregarded in determining the rights of the parties. They rest upon contract and are totally unaffected by the evidence which was introduced for the foundation of the contention, that the company by their conduct were estopped, as against Rockwell, to insist that he had no right to claim the sixty-two and one half inches of water which he bought from the Osborns. The case is barren of the facts which the authorities all agree are essential to the creation of an estoppel. What Rockwell acquired was gotten by a grant of a part of that which rested in contract; he bought with knowledge of it,—must be charged with notice of its limitations, and he must be held bound by its provisions. There was an absence of proof that he bought upon the faith and strength of any antecedent representation, on the part of the company, or that he was misled to his prejudice by anything which they did, upon which he had a right to rely. It is unnecessary to state the whole ground of an estoppel. Enough has been said to show that the plaintiff

in error failed to bring himself within the protection of that principle.

There is no error in the record upon which the judgment ought to be reversed, and it will accordingly be affirmed.

*Affirmed.*

RICHMOND, P. J., took no part in the consideration of this cause.